UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EMPLOYERS MUTUAL CASUALTY COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CV-05-0355 |
| JAMES LOOS AND CATHERINE LOOS, INDIVIDUALLY AND AS ADMINISTRATORS OF THE ESTATE OF ALEXANDRA LOOS, | ) ) ) ) ) | |
| Defendant. | ) ) | |

MEMORANDUM ORDER

CONTI, District Judge

*Introduction*

The instant action arises out of an automobile accident in which Alexzandra[1] Loos ("Alexzandra") was killed. Pending before the court are the parties' cross-motions for summary judgment concerning whether plaintiff Employers Mutual Casualty Company ("plaintiff") breached a contractual duty allegedly owed to Alexzandra's parents by denying their claim for underinsured motorist ("UIM") benefits. Plaintiff commenced this action seeking a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a). Defendants James Loos and Catherine Loos individually and as

---

[1]The parties have agreed that the decedent's correct first name is Alexzandra and that her first name was incorrectly stated in the caption of this case.

administrators of the estate of Alexzandra Loos (collectively, "defendants") filed a counterclaim seeking a judgment against plaintiff for bad faith denial of insurance benefits pursuant to 42 PA. CONS. STAT. § 8371.  Defendants move for summary judgment only with respect to plaintiff's declaratory judgment action seeking a declaration that Alexzandra was an insured at the time of her death and that her claim for UIM is proper.  Plaintiff moves for summary judgment in its favor with respect to its declaratory judgment claim seeking a declaration that it has no obligation to pay UIM benefits to defendants and with respect to defendants' counterclaim seeking a dismissal of defendants' bad faith claim.

### Background

On August 11, 2004, a car driven by Armand Pistilli ("Pistilli") hit Alexzandra, the daughter of James and Catherine Loos, as she was crossing a roadway.  (Joint Statement of Material Facts ("J.S.", Doc. No. 43 ¶ 1).  Alexzandra died as a result of the injuries caused by the accident.  *Id.* ¶ 2.  Alexzandra was the only person who sustained bodily injury as a result of the accident.  Doc. No. 28 ¶ 17.  Since she was a pedestrian at the time of the accident, she was not occupying a motor vehicle.  *Id.* ¶ 16.  Pistilli's vehicle was insured through Leader Insurance.  *Id.* ¶ 3.  Although Leader Insurance offered to pay the full liability limit of $15,000.00 available under its policy, defendants have not accepted this offer.  *Id.* ¶¶ 4-5.  At the time of the accident, defendants were the named insureds under an insurance policy issued by Erie Insurance Company ("Erie") that

covered their family automobiles. *Id.* ¶ 6. Among other things, the Erie policy provided $10,000.00 in medical benefits and $2,500.00 in funeral benefits. *Id.* ¶ 7.

After Alexzandra's death, defendants presented Erie with a claim for both first-party medical ("FPM") benefits and UIM benefits. *Id.* ¶ 8. Erie responded by paying the $10,000.00 limit of its FPM coverage, the funeral benefit, and the full UIM benefit payment of $400,000.00. *Id.*. An arrangement was made to provide for the payment of the UIM benefits to defendants and their dependents in structured settlements. *Id.* Defendants also presented a claim for both FPM and UIM benefits to plaintiff under Policy No. 2E57581 (the "Policy").[2] *Id.* ¶ 9. The Policy provided benefit limits of $10,000.00 for FPM benefits and $2,500.00 for funeral benefits. *Id.* ¶ 10. The Policy, in pertinent part, provided:

> **A.    Coverage**
>    **1.**    We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of an "underinsured motor vehicle".
>
> \* \* \*
>
> **B.    Who Is An Insured**
>    If the Named Insured is designated in the Declarations as:
>    **1.**    An individual, then the following are "insureds":
>       **a.**    The Named Insured and any "family

---

[2]Defendants point out that in light of the payments already made by Erie, a claim for FPM benefits under the Policy will not lie because of a statutory limitation of stacking. J.S. ¶ 9.

3

members".

**b.**    Anyone else "occupying" a covered "motor vehicle" or a temporary substitute for a covered "motor vehicle". The covered "motor vehicle" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

**c.**    Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**2.**    A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

**a.**    Anyone "occupying" a covered "motor vehicle" or a temporary substitute for a covered "motor vehicle". The covered "motor vehicle" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

**b.**    Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

Doc. No. 24, App. 1. On the declaration pages of the Policy, under the words "NAMED INSURED," the language of the Policy read as follows:

> JAKS MUFFLER & BRAKE D/B/A
> JAKS HOUSE OF BENDS
> JAMES & KIRK LOOS
> 894 HENDERSON AVE
> WASHINGTON, PA 15301-1341

Doc. No. 24, App. 1. Immediately below this listing, the Policy declarations stated as follows: "INSURED IS: PARTNERSHIP[.]" When James Loos applied for the Policy, his purpose was to purchase insurance for the business conducted by the partnership known as Jaks Muffler & Brake d/b/a Jaks House of Bends (the "partnership" or "Jaks").

4

J.S. ¶ 11.

The Policy, which was initially issued in 2001, was continuously renewed through the time of the accident. *Id.* ¶ 13. The partners who comprised Jaks at the time of the accident were George Loos and his two sons, James and Kirk Loos. *Id.* ¶ 15. James Loos was responsible for handling the purchase and maintenance of insurance for the partnership, while Kirk Loos was responsible for handling other administrative tasks. *Id.* ¶ 16. At the time of the accident, defendants had both personal homeowners' coverage and personal automobile coverage with Erie. *Id.* ¶ 17. David Leng ("Leng") was the insurance agent for the partnership. *Id.* ¶ 18. James Loos never asked Leng or his company, Duncan Insurance Group ("Duncan"), for insurance that would cover only his house or family members. *Id.* ¶ 19. James and Kirk Loos did not ask Leng to add them to the Policy as individual insureds. *Id.* ¶ 20. At the time of the accident, Kirk Loos had both personal homeowners' coverage and personal motor vehicle coverage. *Id.* ¶ 26.

James Loos did not expect that the Erie homeowner's policy or motor vehicle policy would provide coverage to the business of the partnership. *Id.* ¶ 23. Instead, he expected coverage for claims relating to the business of the partnership to be provided by the Policy. *Id.* In his deposition, James Loos acknowledged that he had never questioned the accuracy of plaintiff's designation of the insured as a partnership. Doc. No. 28, Ex. D at 120. When his daughter Jaminique reached the age of sixteen, James Loos asked Erie, his personal motor vehicle carrier, to add her to the Erie insurance policy. J.S. ¶ 24.

Nevertheless, he did not notify plaintiff or Duncan of this fact. *Id.* Alexzandra Loos never worked for the partnership. *Id.* ¶ 25.

Alexzandra lived in a single-family residence located twelve miles from the commercial building where the partnership conducted its business. *Id.* ¶¶ 27-29. In a letter to James Loos dated October 8, 2004, plaintiff denied defendants' UIM and FPM claims on the ground that Alexzandra was not an "insured" as defined under the UIM endorsement or the first-party benefit form to the Policy. *Id.* ¶ 30. In that letter plaintiff took the position that only the partnership, and not James Loos, was a named insured. Doc. No. 28, Ex. J. James Loos responded by sending a letter to plaintiff requesting reconsideration of the denial, contending that he personally owned one of the vehicles insured under the Policy. J.S. ¶ 31. In a letter dated October 18, 2004 to Patty Leto ("Leto"), plaintiff's coverage counsel, James Loos stated that his 1979 Ford truck had never been a business vehicle, and that it had been owned and used by him only for personal travel. Doc. No. 28, Ex. K. Nevertheless, on July 20, 2005, James Loos testified that he had used the truck for business purposes. J.S. ¶ 31, Ex. D at 76-78. At his deposition, James Loos admitted that this vehicle was used to plow the business lot at Jaks when it snowed, and that it was also used to pick up parts. *Id.* ¶ 32.

Approximately six months after the accident, on February 3, 2005, Carol Daley ("Daley"), an underwriter, sent Leng an e-mail stating that she would be "taking James and Kirk Loos off [the Policy] as named insureds, leaving just Jaks Muffler & Brake

D/B/A Jaks House of Bends as the named insured." Doc. No. 24, App. 3. Daley further

indicated that the 1979 Ford truck would be deleted within thirty days, and that it should

be placed on a personal auto policy. *Id.* Daley made it clear that if these changes did not

meet the approval of the insured, a non-renewal notice would be sent. *Id.* In a response

dated March 14, 2005, Leng expressed his reservations to Daley about her proposed

changes:

> I suggest you add the PU back on. We do not have a response
> from the insured to do this yet. Also, by deleting the vehicle, or
> cancelling the policy at renewal, you are sending a message to the
> insured that you do not want this exposure. The thought would be
> that if you do not want this exposure, there must be coverage for
> this exposure under the UM/UIM for the accident with the
> daughter as a pedestrian. This will make it very difficult for EMC
> to continue to deny that there is coverage.

*Id.* Later that day, Daley responded to Leng and rejected his advice, indicating that her

earlier decision would stand. *Id.*

James Zeigler ("Zeigler"), one of plaintiff's claims managers, testified that

plaintiff typically responded to the communications of its insureds, except where the

communications concerned a "moot point." Doc. No. 31, App. at 10. Zeigler testified

that he believed the listing of James and Kirk Loos as named insureds was to reflect their

status as partners. Doc. No. 44 at 21. He specifically testified that he did not believe

James and Kirk Loos to be named insureds as "individuals." *Id.* In Zeigler's deposition

he noted that plaintiff obtained the advice of legal counsel before commencing the

declaratory judgment action.[3]  Doc. No. 44 at 32.

### Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c).  A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.* at 249.

### Discussion

Plaintiff commenced this action pursuant to the Declaratory Judgment Act, which provides:

---

[3]The court notes that the precise nature of the legal advice obtained by plaintiff is protected by the attorney/client privilege, and that plaintiff's counsel objected to any questioning regarding the precise recommendations made by plaintiff's legal counsel.  Doc. No. 44 at 32.  In response to this objection, defendants' counsel concentrated her questioning on whether an investigation into the validity of defendants' claim occurred, rather than on the advice ultimately secured from plaintiff's counsel.  *Id.*

> In a case of actual controversy within its jurisdiction . . . any court
> of the United States, upon the filing of an appropriate pleading,
> may declare the rights and other legal relations of any interested
> party seeking such declaration, whether or not further relief is or
> could be sought.  Any such declaration shall have the force and
> effect of a final judgment or decree and shall be reviewable as
> such.

28 U.S.C. § 2201(a).  Defendants filed a counterclaim against plaintiff asserting bad faith denial of insurance benefits pursuant to 42 PA. CONS. STAT. § 8371.  Defendants seek summary judgment only with respect to plaintiff's declaratory judgment action.  Plaintiff seeks summary judgment with respect to both its declaratory judgment action and defendants' counterclaim.

Plaintiff is a corporation organized and existing under the laws of Iowa, and it maintains its principal place of business in Des Moines, Iowa.  Doc. No. 1 ¶ 1. Defendants are citizens of Pennsylvania.  *Id.* ¶ 2.  The amount in controversy exceeds the sum of $75,000.00.  *Id.* ¶ 3.  Consequently, jurisdiction is proper under 28 U.S.C. § 1332(a)(1).  Since jurisdiction in this case is based upon diversity of citizenship, the court must apply the choice of law rules applicable in the Commonwealth of Pennsylvania. *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 496-97 (1941).  The parties do not dispute that the substantive law of Pennsylvania is applicable in this case. Therefore, the court will proceed to analyze the relevant legal issues in accordance with Pennsylvania law.

### *I. Declaratory Judgment Action*

The parties' cross-motions for summary judgment with respect to plaintiff's declaratory judgment action concern the question whether Alexzandra was an "insured" under the Policy.  Although defendants initially sought FPM benefits from plaintiff, they now concede that FPM benefits are precluded by 75 PA. CONS. STAT. § 1717, in light of the payments already made by Erie.[4]  Consequently, the question before the court involves only UIM benefits.  The controversy involves whether James Loos was a named insured at the time of Alexzandra's death.  Under the words "Named Insured," the language of the Policy read as follows:

> JAKS MUFFLER & BRAKE D/B/A
> JAKS HOUSE OF BENDS
> JAMES & KIRK LOOS
> 894 HENDERSON AVE
> WASHINGTON, PA 15301-1341

Doc.  No. 24, App. 1.  Immediately below this listing, the Policy declarations stated as follows: "INSURED IS: PARTNERSHIP[.]" Since Alexzandra was a member of James Loos' family, it is clear that she would qualify as an "insured" if James Loos was a "Named Insured."

At the outset, the court will address defendants' argument with respect to the Pennsylvania  Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 PA. CONS.

---

[4]The court need not address the question whether Erie is entitled to "recover contribution pro rata" from plaintiff under 75 PA. CONS. STAT. § 1713(b).  As defendants pointed out, that issue is not before the court.

STAT. § 1701 *et seq.* Defendants argue that the Policy, if construed to exclude

Alexzandra from the "insured" category, would conflict with the statutory definition of

the term "insured." The statute defines that term as follows:

> "INSURED." Any of the following:
>
> (1)    An individual identified by name as an insured in a policy
>        of motor vehicle liability insurance.
>
> (2)    If residing in the household of the named insured:
>        (I)  a spouse or other relative of the named insured; or
>        (ii) a minor in the custody of either the named insured or
>             relative of the named insured.

75 PA. CONS. STAT. § 1702. Defendants contend that insurers cannot contract around the

statutory definition. In support of their position, they rely on the Pennsylvania Supreme

Court's decision in *Prudential Property and Casualty Insurance Co. v. Colbert*, 813 A.2d

747 (Pa. 2002). In *Colbert*, the Pennsylvania Supreme Court determined that an insurer

could not narrow the statutory definition of "insured." *Id.* at 751. An insurer's narrow

definition, though clear and unambiguous, defendants assert has to yield to the broader

definition contained in the statute. *Id.* Defendants argue that the MVFRL mandates a

determination that Alexzandra was an "insured" at the time of her death, regardless of

whether she would otherwise qualify as such under the Policy.

The problem with defendants' argument with respect to this issue is that it begs the

question. The MVFRL's definition, by its language, is applicable only where the named

insured is an individual person. *Donegal Mut. Ins. Co. v. Raymond*, 899 A.2d 357, 363-

11

64 (Pa.Super.Ct. 2006); *The Insurance Co. of Evanston v. Bowers*, 758 A.2d 213, 216-18

(Pa.Super.Ct. 2000).  The central issue in this case is whether Alexzandra's father, James

Loos, was a "named insured" at the time of the accident.  If James Loos was a "named

insured," Alexzandra would qualify as an "insured" under both the Policy and the statute.

On the other hand, if James Loos was not a "named insured," Alexzandra would not

qualify as an "insured," regardless whether the controlling definition is that of the Policy

or the statute.

Despite the argument advanced by defendants, the instant case does not present a

conflict between the Policy and the MVFRL.  Here, plaintiff argues that the insured was

Jaks, the partnership, thereby precluding a determination that James Loos was a named

insured and that Alexzandra was an insured.  If James Loos was a "named insured," it is

clear that Alexzandra would qualify as an "insured" under both the Policy definition and

the MVFRL definition.  The dispositive question is not which definition applies, but

rather whether James Loos qualifies as a "named insured."[5]  Consequently, there is no

need for the court to determine whether a conflict exists between the Policy definition and

the MVFRL definition.  Any conflict between the definitions would not affect the

ultimate disposition of this case.  For this reason, the court will proceed to evaluate the

parties' cross-motions for summary judgment to determine whether James Loos was a

"named insured."

---

[5]Defendants do not argue that the term "named insured" has different meanings within the
contexts of the Policy and the statute.

In *Utica Mutual Insurance Co. v. Contrisciane*, 473 A.2d 1005 (Pa. 1984), the Pennsylvania Supreme Court categorized the three classifications of insureds typically contained in UIM insurance policies.[6]  These classifications are usually referred to as "class one," "class two" and "class three" insureds.  *Id.* at 1010.  The category of class one insureds generally includes "the named insured and any designated insured, and, while residents of the same household, the spouse and relatives of either[.]" *United States Fid. & Guar. Co. v. Tierney Assocs, Inc.*, 213 F.Supp.2d 468, 470 (M.D.Pa. 2002).  The category of class two insureds includes "any other person while occupying an insured highway vehicle[.]" *Id.*  Finally, the category of class three insureds includes any person entitled to recover because of bodily injury sustained by a class one or class two insured. *Id.*

If the named insured is an individual, the applicable definition contained in the Policy includes these three traditional categories.  If the named insured is a partnership, the definition includes only class two and class three insureds.  Doc. No. 29 at 4.  Since Alexzandra was a pedestrian when she was struck by Pistilli's vehicle, she was obviously not a class two insured.  Furthermore, Alexzandra was the only person injured as a result of the accident.  Therefore, it is clear that she was not a class three insured.  The court's inquiry is limited to the question whether Alexzandra, at the time of the accident, was a

---

[6]Since the categories are generally a creature of contract rather than of statute, it is important for litigants to remember that these generalizations may not necessarily hold true from one insurance policy to the next policy.

class one insured under the Policy.

Under the Policy, class one insureds include "[t]he Named Insured and any 'family members.'" Doc. No. 24, App. 1 at 26.  The term "family member" is defined as "a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child."  *Id.* at 28.  It is undisputed that Alexzandra was a member of James Loos' family within the meaning of that definition.  The only material question is whether James Loos was a named insured.  It is to that inquiry that the court now turns.

The law of Pennsylvania with respect to the interpretation of insurance contracts is firmly established.  In *Madison Construction Co. v. The Harleysville Mutual Insurance Co.*, 735 A.2d 100 (Pa. 1999), the Pennsylvania Supreme Court explained:

> The task of interpreting an insurance contract is generally performed by a court rather than by a jury.  The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument.  Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement.  Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.
>
> *Gene & Harvey Builders v. Pennsylvania Mfrs. Ass'n*, 512 Pa. 420, 426, 517 A.2d 910,913 (1986) (quoting *Standard Venetian Blind Co. v. American Empire Ins. Co.*,503 Pa. 300, 304-05, 469 A.2d 563, 566(1983)) (citations omitted).  Contractual language is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one

14

> sense." *Hutchison v. Sunbeam Coal Co.*, 513 Pa. 192, 201, 519
> A.2d 385, 390(1986).  This is not a question to be resolved in a
> vacuum.  Rather, contractual terms are ambiguous if they are
> subject to more than one reasonable interpretation when applied
> to a particular set of facts.  *See Gamble Farm*, 440 Pa.Super. at
> 505,656 A.2d at 144;  *Techalloy*, 338 Pa.Super. at 7, 487 A.2d at
> 823.  We will not, however, distort the meaning of the language
> or resort to a strained contrivance in order to find an ambiguity.
> *Steuart v. McChesney*, 498 Pa. 45, 53, 444 A.2d 659, 663
> (1982).

*Id.* at 106.  It is important to remember that ambiguous insurance policy provisions are

construed in favor of coverage without regard to whether that construction is right or

wrong.  The Pennsylvania Supreme Court recently highlighted this point in *Prudential*

*Property & Casualty Insurance Co. v. Sartno*, 903 A.2d 1170 (Pa. 2006):

> The instant matter is a prime example of language in a policy that
> can be understood in more than [one] way.  Sartno prefers one
> interpretation; Prudential favors the other.  Regardless of which
> one is "right" or "wrong," the fact is that because each
> interpretation is reasonable, the exclusionary term is ambiguous,
> and we must construe it in favor of the insured.

*Id.* at 1177.

In the instant case, the dispute centers not on the language of the Policy provisions

themselves, but rather on the identity of the "named insured."  Defendants claim that the

partnership and the individuals, James Loos and Kirk Loos, were all named insureds at

the time of the accident.  Plaintiff claims that only the partnership was a named insured.

It is clear that on the Policy declarations page, there is an identification of the insured as a

partnership.  The names of James and Kirk Loos, however, appear together with the name

15

of the partnership beneath the heading "Named Insured."  In support of their position that

James and Kirk Loos were named insureds, defendants contend that the Policy should

simply be construed to include James Loos as a named insured.  That construction

arguably results either from the purportedly unambiguous listing of James Loos under the

"Named Insured" heading or the ambiguity caused by the inconsistency between the

"Named Insured" and "Insured" headings.[7]

Since the Pennsylvania Supreme Court has not yet ruled on the precise issue

presented in the instant case, the court must predict how the Pennsylvania Supreme Court

would rule on the issue.  In making that determination, the court may consider decisions

of lower Pennsylvania courts, as well as decisions of federal courts of appeals and district

courts interpreting Pennsylvania law.  *United States Fid. & Guar. Co.*, 213 F.Supp.2d at

471.  If decisions of courts of other states involve issues similar to those raised in this

case, those decisions, although not precedential, may also be used to inform the court's

inquiry.  *Id.*

Given the inconsistency in the Policy declarations resulting from the listing of the

partnership as the insured and the listing of the name of the partnership followed by the

names James Loos and Kirk Loos under the heading "Named Insureds," the court cannot

---

[7]They also argue that even if the court were to construe the Policy to insure only the
partnership, James and Kirk Loos would qualify as named insureds by operation of law.  This
argument is based upon Pennsylvania's adherence to an aggregate theory of partnership.  *In re
Morrison's Estate*, 22 A.2d 729, 732-33 (Pa. 1941).  By reason of the court's finding that the
construction of the Policy's language includes James Loos as a named insured, the court need not
address the alternative argument.

conclude that the Policy unambiguously extends coverage to Alexzandra.  It is not clear that the appearance of James Loos' name under the "Named Insured" heading confirms his inclusion as an insured under the Policy.  In his deposition, James Loos acknowledged that he had never questioned the accuracy of plaintiff's designation of the insured as a partnership.  In similar circumstances, courts have found an ambiguity to be present, thereby precluding a determination that coverage is clearly and unambiguously mandated by the language of the applicable policy.  *See  Nationwide Mut. Ins. Co. v. United States Fid. & Guar. Co.*, 529 F.Supp. 194, 198 (E.D.Pa. 1981)("Having reviewed Endorsement #4 in the context of the entire policy the Court finds the meaning of the phrase 'Harold and Warren Treegoob T/A Treegoobs' is ambiguous in that reasonable individuals could differ as to whether this provision designates the partnership, the individuals, or both as the named insured."); *General Casualty Co. of Wisconsin v. Outdoor Concepts*, 667 N.W.2d 441, 445 (Minn. Ct. App. 2003)("And other jurisdictions have concluded that listing the named insured as an individual d/b/a a trade name results in an ambiguity."); *Ohio Casualty Ins. Co. v. Fike*, 304 So.2d 136, 137 n. 2 (Fla. Dist. Ct. App. 1974)("The ambiguity exists with respect to whether the 'named insured' is limited to the partnership entity or whether it also includes the individuals named therein, particularly where an amendatory endorsement is made without limitation.").

It remains to be determined whether the Policy can be construed unambiguously to preclude coverage in the instant case.  In a letter to James Loos dated October 8, 2004,

plaintiff took the position that only the partnership, and not James Loos, was a named insured.  Plaintiff takes this same position in this litigation, which is why the declaratory judgment action was commenced.  Based upon a review of the record, the court concludes that the Policy does not unambiguously preclude coverage for Alexzandra as of the date of the accident.

The court has before it an e-mail exchange between Leng and Daley, an underwriter.  This e-mail exchange occurred subsequent to the accident.  On February 3, 2005, Daley sent Leng an e-mail stating that she would be "taking James and Kirk Loos off as named insureds, leaving just Jaks Muffler & Brake D/B/A Jaks House of Bends as the named insured."  Doc. No. 24-4, App. 3.  Daley further indicated that a 1979 Ford truck would be deleted within thirty days, and that it should be placed on a personal auto policy.  Daley made it clear that if these changes did not meet the approval of the insured, a non-renewal notice would be sent.  In a response dated March 14, 2005, Leng expressed his reservations about Daley's proposed changes:

> I suggest you add the PU back on.  We do not have a response from the insured to do this yet.  Also, by deleting the vehicle, or cancelling the policy at renewal, you are sending a message to the insured that you do not want this exposure.  The thought would be that if you do not want this exposure, there must be coverage for this exposure under the UM/UIM for the accident with the daughter as a pedestrian.  This will make it very difficult for EMC to continue to deny that there is coverage.

*Id*.  Later that day, Daley responded by rejecting Leng's advice, indicating that her earlier decision would stand.

The relevance of the insurance coverage for the truck concerns an inconsistency in the contentions made by James Loos with respect to its use.  In a letter to Leto, plaintiff's coverage counsel, James Loos stated that the 1979 Ford truck had never been a business vehicle and that it had been owned and used by him only for personal travel.  This letter was dated October 18, 2004.  This letter and the timing of the letter after coverage had been denied would support an argument that James Loos believed that the Policy's extension of coverage for a vehicle used only for personal travel would preclude a determination that only the partnership was an insured.  Nevertheless, on July 20, 2005, James Loos at his deposition testified that he had used the truck for business purposes.  Daley's decision to remove the truck from the Policy arguably was triggered by James Loos' letter of October 18, 2004.  Although the evidence could support a determination that plaintiff always considered the Policy to extend only to the partnership, the court cannot conclude that the Policy unambiguously precludes coverage.  Daley's decision to take the names of James and Kirk Loos "off" as named insureds provides evidentiary support to defendants' argument that, as of the date of the accident, James and Kirk Loos were named insureds.

Given the lack of clarity in the Policy declarations, the court must conclude that an ambiguity exists regarding whether James Loos was a named insured as of the date of the accident.  "An ambiguity exists only when a policy provision is reasonably susceptible of more than one meaning."  *Donegal Mutual Ins. Co.*, 899 A.2d at 361.  In the instant case,

it is clear that the Policy could reasonably be construed to extend coverage to Alexzandra, or to extend coverage only to the partnership.  "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement."  *Id.*  At this point, it makes no difference which interpretation is "right" or "wrong."  *Prudential Property*, 903 A.2d at 1177.  The court must construe the Policy in favor of coverage.  *Madison Constr. Co.*, 735 A.2d at 106.  Accordingly, the court will find that the Policy, as of the date of the accident, provided coverage to James Loos as a named insured.

The court concludes, after construing the Policy in favor of coverage, that James Loos at the time of the accident was a named insured under the Policy.  The court also finds that Alexzandra, as a member of James Loos' family under the uncontested terms of the Policy, was an insured under the Policy at the time of her tragic death and was entitled to UIM coverage.  By reason of this construction of the Policy in favor of coverage, defendants' motion for summary judgment, which seeks a determination as a matter of law only with respect to plaintiff's declaratory judgment action, will be granted, and with respect to plaintiff's claim based upon the Declaratory Judgment Act, plaintiff's motion for summary judgment will be denied.

## II. Bad Faith Counterclaim

Defendants assert a counterclaim against plaintiff based upon bad faith denial of insurance benefits pursuant to 42 PA. CONS. STAT. § 8371.[8]  Plaintiff moves for summary judgment with respect to defendants' counterclaim.  The applicable statutory provision provides:

### § 8371.  Actions on insurance policies

 In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 PA. CONS. STAT. § 8371.  Although the statute does not define the term "bad faith," the Pennsylvania Superior Court in *Terletsky v. Prudential Property*, 649 A.2d 680 (Pa.Super.Ct. 1994), set forth two elements necessary to prove a section 8371 bad faith

---

[8]Defendants' bad faith counterclaim is based upon 42 PA. CONS. STAT. § 8371. Pennsylvania courts also recognize "a common law action for bad faith sounding in contract." *Johnson v. Beane*, 664 A.2d 96, 101 (Pa. 1995)(Cappy, J., concurring).  Pennsylvania does not recognize a common law tort action for bad faith.  *D'Ambrosio v. Pennsylvania National Mutual Casualty Ins. Co.*, 431 A.2d 966 (Pa. 1981).  The only tort remedy against insurers for bad faith available under Pennsylvania law is the statutory remedy provided by section 8371.  *The Birth Center v. The St. Paul Companies, Inc.*, 787 A.2d 376, 390-91 (Pa. 2001)(Nigro, J., concurring). Insureds may "supplement the breach of contract damages that they can obtain through their bad faith contract action by also bringing a claim under § 8371 for the specific damages authorized in that statute."  *Id.* at 391 (Nigro, J., concurring).

claim:

> (1) the insurer did not have a reasonable basis for denying benefits under the applicable insurance policy; and

> (2) the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim.

*Id.* at 688.

There is a requisite level of culpability associated with a finding of bad faith. Merely negligent conduct, however harmful to the interests of the insured, is recognized by Pennsylvania courts to be categorically below the threshold required for a showing of bad faith. *Brown v. Progressive Ins. Co. & Mountain Laurel Assurance Co.*, 860 A.2d 493, 501 (Pa.Super.Ct. 2004). "Bad faith claims are fact specific and depend on the conduct of the insurer *vis a vis* the insured." *Condio v. Erie Ins. Exchange*, 899 A.2d 1136, 1143 (Pa.Super.Ct. 2006)(quoting Williams v. Nationwide Mut. Ins. Co., 750 A.2d 881, 8887 (Pa.Super.Ct. 2000).

In *Klinger v. State Farm Automobile Insurance Co.*, 115 F.3d 230 (3d Cir. 1997), the United States Court of Appeals for the Third Circuit concluded that the Pennsylvania Superior Court in *Terletsky* did not intend to include an element of "self-interest or ill-will" within the test for establishing bad faith. *Id.* at 233-34. The court of appeals determined that the superior court in *Terletsky* had not applied this "third element." *Id.* Subsequent to *Klinger*, the superior court stated:

> [O]ur Court has adopted the following definition of "bad

faith" as applicable in the context of insurance:

> "Bad faith" on part of insurer is any frivolous or
> unfounded refusal to pay proceeds of a policy; it is
> not necessary that such refusal be fraudulent.  For
> purposes of an action against an insurer for failure
> to pay a claim, such conduct imports a dishonest
> purpose and means a breach of a known duty (i.e.,
> good faith and fair dealing), through some motive
> of self-interest or ill will; mere negligence or bad
> judgment is not bad faith.

*O'Donnell v. Allstate Ins. Co.*, 734 A.2d 901, 905 (Pa.Super.Ct. 1999)(internal quote

from BLACK'S LAW DICTIONARY 139 (6th ed. 1990)).

While it is true that there is no "third element" applicable to a bad faith claim,

"motive of self-interest or ill will" as recognized in *O'Donnell* reflects upon whether a

refusal to pay benefits is frivolous or unfounded.  The superior court in *O'Donnell* stated:

> Generally, success in bringing a claim of bad faith requires the
> insured to present clear and convincing evidence that "the insurer
> did not have a  reasonable basis for denying benefits under the
> policy and that the insurer knew of or recklessly disregarded its lack
> of reasonable basis in denying the claim."

*Id.* (quoting *MGA Ins. Co. v. Bakos*, 699 A.2d 751, 754 (Pa.Super.Ct.1997)).  A "motive

of self-interest or ill will" may be considered in determining whether an accused

*knowingly* or *recklessly* disregarded its lack of a reasonable basis for denying a claim.

The court of appeals' characterization in *Klinger* of a "motive of self-interest or ill will"

as an inapplicable "third element" needs to be understood in the context of Pennsylvania

courts not requiring proof of self-interest or ill will as a separate element, but rather to

23

support a finding of a frivolous or unfounded refusal to pay.  *See Hollock v. Erie Ins. Exchange*, 903 A.2d 1185, 1187 n.1 (Pa. 2006)(Cappy, C.J., dissenting)("Although this Court has not spoken to the definition of 'bad faith' the Superior Court has consistently held that bad faith under the statute is established on a showing that the insurer breached its duty to act in good faith and fair dealing with its insured by any frivolous or unfounded refusal to pay the policy through some motive of self-interest or ill will."); *Brown*, 860 A.2d at 501 ("In other words, the plaintiff must show that the insurer breached its duty of good faith through some motive of self-interest or ill will."); *Bonenberger v. Nationwide Mutual Ins. Co.*, 791 A.2d 378, 380 (Pa.Super.Ct. 2002)("It also must be shown that the insurer breached a known duty (*i.e.*, good faith and fair dealing), through some motive of self interest or ill will.").

In situations where the Pennsylvania Supreme Court has not ruled on a particular issue of Pennsylvania law, district courts in order to apply Pennsylvania law need to predict how the supreme court would rule on the issue. *Wirth v. Aetna U.S. Healthcare*, 469 F.3d 305, 309 (3d Cir. 2006).  In making that prediction district courts may be informed by decisions of Pennsylvania lower courts.  *Dilworth v. Metropolitan Life Ins. Co.*, 418 F.3d 345, 349 (3d Cir. 2005).  Here, the court predicts that the Supreme Court of Pennsylvania will rule consistently with the holdings of the Pennsylvania Superior Court concerning the level of culpability that needs to be associated with a finding of bad faith. The court of appeals in *Klinger* did not find that a motive of self-interest or ill will was

24

irrelevant in determining "bad faith."  To the extent that *Klinger* holds that there is no "third element" for purposes of a bad faith claim, the reasoning of the court of appeals is consistent with a conclusion that considerations of "the motive or self-interest or ill will" are probative with respect to a refusal to pay being frivolous or unfounded.  This court concludes that the "motive of self-interest or ill will" level of culpability is not a third element required for a finding of bad faith, but is probative of the second element identified in *Terletsky*, i.e., "the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim."  *Terletsky*, 649 A.2d 688.

Under Pennsylvania law, "bad faith must be proven by clear and convincing evidence and not merely insinuated."  *Id.*  Defendants must meet the "clear and convincing evidence" standard in order to prevail on their claim under section 8371.[9]  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), the United States Supreme Court made it clear that "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to that case."  *Id.* at 255.  The Supreme Court explained:

---

[9]The principle that Pennsylvania law requires bad faith on the part of an insurer to be proven by clear and convincing evidence is rooted in the Pennsylvania Supreme Court's decision in *Cowden v. Aetna Casualty & Surety Co.*, 134 A.2d 223, 229 (Pa. 1957), which was issued before section 8371 was enacted by the Pennsylvania legislature.  In *Polselli v. Nationwide Mutual Fire Ins. Co.*, 23 F.3d 747 (3d Cir. 1994), the United States Court of Appeals for the Third Circuit stated that a legislature is "presumed to have been familiar with the law as it then existed and the judicial decisions construing it."  *Id.* at 751.  Since the Pennsylvania legislature was silent on the applicable burden of proof in an action brought under section 8371, the statutory provision has been construed to incorporate the "clear and convincing evidence" standard that had been established in *Cowden*. *Id.*

Just as the "convincing clarity" requirement is relevant in ruling on a motion for directed verdict, it is relevant in ruling on a motion for summary judgment. When determining if a genuine factual issue as to actual malice exists in a libel suit brought by a public figure, a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability under *New York Times* [*v. Sullivan*, 376 U.S. 254 (1964)]. For example, there is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to find actual malice by clear and convincing evidence.

Thus, <u>in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden</u>. This conclusion is mandated by the nature of this determination. <u>The question here is whether a jury could reasonably find *either* that the plaintiff proved his case by the quality and quantity of evidence required by the governing law *or* that he did not</u>. Whether a jury could reasonably find for either party, however, cannot be defined except by the criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant: It makes no sense to say that a jury could reasonably find for either party without some benchmark as to what standards govern its deliberations and within what boundaries its ultimate decision must fall, and these standards and boundaries are in fact provided by the applicable evidentiary standards.

*Id.* at 254-55 (italics in original, underlining added). Accordingly, this court must evaluate plaintiff's motion for summary judgment relating to defendants' bad faith claim with the "clear and convincing evidence" standard in mind.

In *The Northwestern Mutual Life Insurance Co. v. Babayan*, 430 F.3d 121 (3d Cir. 2005), the United States Court of Appeals for the Third Circuit noted that "the insured's burden in opposing a summary judgment motion brought by the insurer is 'commensurately high because the court must view the evidence presented in light of the

26

substantive evidentiary burden at trial.'"   *Id.*  at 137 (quoting *Kosierowski v. Allstate Ins. Co.*, 51 F.Supp.2d 583, 588 (E.D.Pa. 1999).  "[A]n insurer's denial of a claim does not constitute bad faith if it is based on a reasonable legal position in an unsettled area of the law."  *Id.* at 136 n.22.  "The 'clear and convincing' standard requires that [defendants] show 'that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not [plaintiff] acted in bad faith.'"  *J.C. Penny Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (quoting *Bostick v. ITT Hartford Group, Inc.*, 56 F.Supp.2d 580, 587 (E.D.Pa. 1999)).  The court of appeals has recognized that using litigation for the purpose of evading a duty owed by an insurer to an insured may constitute bad faith under section 8371.  *W.V. Realty, Inc. v. Northern Ins. Co. of New York*, 334 F.3d 306, 313 (3d Cir. 2003).

        In support of their bad faith claim, defendants contend that plaintiff had no reasonable basis for denying UIM benefits under the Policy.  The problem with defendants' argument, however, is that it assumes that the position taken by plaintiff in this litigation is not a "reasonable" one.  "Bad faith cannot be found where the insurer's conduct is in accordance with a reasonable but incorrect interpretation of the insurance policy and the law."  *Bostick v. ITT Hartford Group, Inc.*, 56 F.Supp.2d 580, 587 (E.D.Pa. 1999).  Although the court has determined that defendants are entitled to summary judgment with respect to plaintiff's declaratory judgment action, the court has not found plaintiff's argument to be unreasonable.  If it had been clear to plaintiff that James Loos

27

was a named insured at the time of the accident, plaintiff would not have had a reasonable basis for denying defendants' UIM claim. The evidence of record, however, does not support defendants' position that such a determination could have been made with that level of clarity. While it is true that James Loos' name appeared under the heading of "Named Insured," it is also true that his name appeared underneath the name of the partnership. Furthermore, on that same page, the Policy declarations identified the insured as a "partnership" without referring to any individual.

Defendants again call the court's attention to the e-mail exchange between Daley and Leng. It is true that on February 3, 2005, Daley sent Leng an e-mail indicating that she intended to take "James and Kirk Loos off as named insureds, leaving just Jaks Muffler & Brake D/B/A Jaks House of Bends as the named insured." Doc. No. 24-4, App. 3 at 48. This message, however, must be read in context. When Leng responded, he insisted that the removal of the 1979 Ford pickup truck from the Policy would make it difficult for plaintiff to continue to deny that the Policy provided UIM coverage for the accident. The deletion proposed by Daley arguably could be viewed as a change in the terms of the Policy or as a clarification of what those terms had always been. In order to establish a claim under section 8371, defendants must do more than show that plaintiff acted to clarify its perceived limits to the scope of coverage after being presented with a seemingly questionable UIM claim.

Defendants seek to bolster their bad faith claim by pointing out that plaintiff failed

to reply to James Loos' letter of October 18, 2004.  It was that letter in which James Loos stated that the truck was owned by him personally and that it was used only for his personal use.  At the conclusion of the letter, he requested plaintiff to reply to him in writing.  Defendants argue that section 1171.5(a)(10)(ii) of the Unfair Insurance Practices Act, 40 PA. STAT. § 1171.5(a)(10)(ii), (the "UIPA"), which classifies as an unfair insurance practice the act of "[f]ailing to acknowledge and act promptly upon written or oral communications with respect to claims arising under insurance policies," should be considered by this court in determining the issue of bad faith.

    In *Romano v. Nationwide Mutual Fire Insurance Company*, 646 A.2d 1228 (Pa.Super.Ct. 1994), the Pennsylvania Superior Court explained that "the UIPA and the Department of Insurance Regulations can only be enforced by the State Insurance Commissioner and not by way of private action."  *Id.* at 1232.  Nevertheless, a court may look to the language of the UIPA as a guide for determining whether an insurer's conduct constitutes "bad faith" within the meaning of section 8371.  *Id.* at 1233.  Defendants cannot pursue a claim under the UIPA, and they do not purport to do so.  *The Galman Group v. American Safety Indemnity Co.*, 2004 U.S. Dist. LEXIS 8447 at *5-6 (E.D.Pa. May 5, 2005).  They may, however, pursue a claim under section 8371 even though the conduct alleged to constitute bad faith falls within the purview of acts and practices prohibited by the UIPA.  *Wright v. North American Life Assurance Co.*, 539 A.2d 434,

438 (Pa.Super.Ct. 1988).[10]

        In support of their contention that plaintiff's failure to respond to James Loos' letter constituted bad faith, defendants call the court's attention to the testimony of Zeigler.  They rely on Zeigler's testimony for the purpose of establishing that plaintiff was aware of its duty to reply to the letter.  The portions of Zeigler's testimony cited by defendants, however, do not establish that he was specifically aware of plaintiff's obligation to reply to James Loos' letter.  Zeigler acknowledged a generalized awareness of an insurer's obligation to remain in contact with its insured during the pendency of a claim.  He apparently believed that a response was sent to James Loos, even though an examination of the relevant documentation proved his belief to be inaccurate.  While the court may look to the language of the UIPA in considering defendants' bad faith claim, defendants cannot establish the existence of bad faith under section 8371 merely by demonstrating that plaintiff's conduct failed to adhere to a specific mandate of the UIPA.  A failure to comply may be equally consistent with a mistake as with bad faith.  In those circumstances a finding of bad faith, without other evidence, cannot reasonably, under the clear and convincing standard, be found by the trier of fact.

        Defendants are correct insofar as they contend that the court may look to the

---

        [10]The decision of the Pennsylvania Superior Court in *Wright v. North American Life Assurance Co.*, 539 A.2d 434 (Pa.Super.Ct. 1988), preceded the enactment of section 8371.  In *Wright*, the superior court held that a plaintiff could maintain a private cause of action under the Unfair Trade Practices and Consumer Protection Law even though the allegations in the complaint fell within the purview of the UIPA.  *Id.* at 438.  Similarly even if the allegations here fall within the purview of the UIPA, defendants may maintain a claim under section 8371.

language of the UIPA for guidance with respect to whether particular conduct on the part

of an insurer constitutes bad faith.  *Romano*, 646 A.2d at 1233.  Nonetheless, that does

not mean that every violation of the UIPA automatically constitutes bad faith within the

meaning of section 8371.  Although the Pennsylvania Supreme Court has not yet

addressed the issue, both the Pennsylvania Superior Court and the United States Court of

Appeals for the Third Circuit have taken the position that a violation of the UIPA does

not constitute *per se* bad faith under section 8371.  *UPMC Health System v. Metropolitan

Life Ins. Co.*, 391 F.3d 497, 505-06 (3d Cir. 2004); *Toy v. Metropolitan Life Ins. Co.*, 863

A.2d 1, 14 (Pa.Super.Ct 2004).  While the alleged bad faith need not be the literal act of

denying an insured's claim, "the essence of a bad faith claim must be the unreasonable

and intentional (or reckless) denial of benefits."  *UPMC Health System*, 391 F.3d at 506.

Plaintiff's mere failure to respond to a letter cannot alone suffice to establish the

existence of statutory bad faith.[11]

Defendants further argue that plaintiff engaged in bad faith by initiating this

declaratory judgment action.  Under Pennsylvania law, an insurance company's

construction of an insurance policy that turns out to be erroneous does not automatically

---

[11]It is worthy of note that the plain language of the UIPA characterizes an insurer's failure to respond promptly to an insured's communications as an unfair insurance practice only "if committed with such frequency as to indicate a business practice[.]"  40 PA. STAT. § 1171.5(a)(10).  Zeigler testified that plaintiff typically responded to the communications of its insureds, except where the communications concerned a "moot point."  Consequently, even if a violation of the UIPA would support a finding of bad faith for purposes of section 8371, defendants by pointing to only one purported violation have not established on the record before the court that plaintiff's conduct violated the UIPA.

correlate to bad faith conduct.  *Bostick*, 56 F.Supp.2d at 587.

> While an insurance company has a duty to accord the interests of its
> insured the same consideration it gives its own interests, an insurer
> is not 'bound to submerge its own interest in order that the insured's
> interests may be made paramount,' *Cowden v. Aetna Cas. and Sur.
> Co.*, 389 Pa. 459, 134 A.2d 223, 228 (Pa. 1957), and an insurer does
> not act in bad faith by investigating and litigating legitimate issues
> of coverage.

*Hyde Athletic Industries, Inc. v. Continental Casualty Co.*, 969 F.Supp. 289, 307 (E.D.Pa.

1997).

Defendants fault plaintiff for relying exclusively on the language of the Policy,

and not the MVFRL, in determining whether to initiate this declaratory judgment action.

As noted earlier, however, the MVFRL's definition of the term "insured" applies only

where the named insured is an individual person.  *Donegal Mutual Ins. Co.*, 899 A.2d at

363-64; *The Insurance Co. of Evanston*, 758 A.2d at 216-18.  Since plaintiff maintained

the view that the insured was a partnership, its failure to investigate the applicability of

the MVFRL cannot be found by a reasonable finder of fact under the clear and

convincing standard to constitute bad faith.

In more general terms, defendants contend that the investigation conducted by

plaintiff was inadequate.  They rely on the language of the UIPA, which characterizes as

an unfair insurance practice the act of "[r]efusing to pay claims without conducting a

reasonable investigation based upon all available information."  40 PA. STAT. §

1171.5(a)(10)(iv).  That kind of practice is, however, characterized as such only "if

committed or performed with such frequency as to indicate a business practice[.]" 40 PA.

STAT. § 1171.5(a)(10).

The legal standards governing the application of section 8371 have been described

as follows:

- "Under Pennsylvania law, an insurer owes a duty of good faith to its insured.  This duty of good faith includes the duty to investigate a claim fairly and objectively, along with the obligation to reject claims only with good cause."  *Leach v. Northwestern Mutual Ins. Co.*, No. 01-2364, 2005 U.S. Dist. LEXIS 39966 at *28 (W.D.Pa. Dec. 22, 2005)(citations omitted).

- "[B]ad faith is not established if there is any reasonable interpretation that supports a coverage determination favoring the insured."  *Krisa v. The Equitable Life Assurance Soc'y*, 113 F.Supp.2d 694, 704 (M.D.Pa. 2000).

- Plaintiff "is not required to show [that] the process by which it reached its conclusion was flawless or that the investigatory methods it employed eliminated possibilities at odds with its conclusion."  *Id.* (quoting *Cantor v. The Equitable Life Assurance Soc'y*, No. Civ.A. 97-CV-5711, 1999 WL 219786 at *3 (E.D.Pa. April 12, 1999)).

- "[A]n insurance company simply must show [that] it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its actions."  *Id.*

- "[I]f evidence arises that discredits the insurer's reasonable basis, the insurer's duty of good faith and fair dealing requires it to reconsider its position and act accordingly, all the while remaining 'committed to engage in good faith with its insured.'"  *Condio*, 899 A.2d at 1145 (quoting *Bonenberger v. Nationwide Mut. Ins. Co.*, 791 A.2d 378, 381 (Pa.Super.Ct. 2002)).

In the instant case, the disagreement between the parties with respect to the

underlying coverage issue primarily concerns the interpretation of the Policy, rather than

the truth or falsity of particular facts.  For this reason, a reasonable trier of facts cannot conclude that evidence arose which discredited plaintiff's reasonable basis for denying defendants' UIM claim.  The question before the court is whether plaintiff had a reasonable basis for denying the claim.  Given the nature of the inquiry and the evidence of record, the court concludes that no reasonable trier of fact could return a verdict for defendant under the clear and convincing standard of proof on their section 8371 claim and thus plaintiff is entitled to summary judgment with respect to defendants' section 8371 claim.

The court's conclusion is supported by Zeigler's deposition testimony, which has been relied upon extensively by defendants with respect to their bad faith argument. Zeigler testified that he believed the listing of James and Kirk Loos as named insureds to reflect their status as partners.  He specifically testified that he did not believe James and Kirk Loos to be named insureds as "individuals."  Furthermore, it is clear from Zeigler's deposition transcript that plaintiff obtained the advice of legal counsel before commencing the declaratory judgment action.  Defendants' assertion that plaintiff engaged in bad faith by failing to conduct an independent analysis of Pennsylvania law, aside from that conducted by its counsel, is without merit.  Even if the court were inclined to assume *arguendo* that a prudent insurance company would engage in an independent analysis of the governing law, plaintiff's failure to do so, without more, does not constitute "bad faith" within the meaning of section 8371.

34

It is clear that "mere negligence or bad judgment is not bad faith." *O'Donnell*, 734 A.2d at 905. Pennsylvania law does not recognize bad faith where an insurer makes "a reasonable legal conclusion based on an area of the law that is uncertain or in flux." *Brown*, 860 A.2d at 501. This court's rejection of plaintiff's basis for denying defendants' UIM claim by reason of Pennsylvania law mandating a construction of the Policy in favor of insurance coverage does not covert that basis into an "unreasonable" one.[12]

Under Pennsylvania law, the presence or absence of bad faith does not turn on the legal correctness of the basis for an insurer's denial of an insured's claim. *Jung v. Nationwide Mutual Fire Ins. Co.*, 949 F.Supp. 353, 359-60 n.7 (E.D.Pa. 1997). If it did, the need for an independent analysis of an insured's bad faith claim would disappear, as the applicable section 8371 claim would turn specifically on the underlying coverage determination. The Pennsylvania courts, however, have construed section 8371 to provide a remedy for insureds whose claims are denied on unreasonable bases. *Brown*, 860 A.2d at 500-01; *O'Donnell*, 734 A.2d at 910. Notwithstanding this court's decision with respect to the declaratory judgment action, the instant case simply does not fall into that category. The court will grant plaintiff's motion for summary judgment with respect to defendants' section 8371 claim.

_____

[12]Since the court concludes that plaintiff's basis for denying defendants' UIM claim, though legally incorrect, was reasonable, there is no need for the court to address the question whether the alleged "inaccuracy" of certain statements made by James Loos to plaintiff would impact defendants' ability to pursue an otherwise valid bad faith claim under section 8371.

35

### *Conclusion*

AND NOW, this  28th  day of February, 2007, upon consideration of the cross-motions for summary judgment filed by defendants James Loss and Catherine Loos, individually and as administrators of the estate of Alexandra Loos (Doc. No. 24) and plaintiff Employers Mutual Casualty Company (Doc. No. 28), **IT IS ORDERED** that defendants' motion for summary judgment is **GRANTED** with respect to plaintiff's claim under 28 U.S.C. § 2201(a), that plaintiff's motion for summary judgment is **DENIED** with respect to its claim under 28 U.S.C. § 2201(a), and that plaintiff's motion for summary judgment is **GRANTED** with respect to defendants' counterclaim under 42 Pa. Cons. Stat. § 8371.

The clerk shall mark this case closed.

By the court:


/s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge


cc: Counsel of Record

36